UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

FILED
JAN - 9 2008
U.S. DISTRICT COURT
WHEELING, WV 26003

| | | |
|---|---|---|
| **KAREN BISSETT and ROGER BISSETT** | : | |
| | : | |
| **Plaintiff** | : | |
| vs. | : | **Civil Action No:** 1:08-CV-19 |
| | : | |
| **DAVOL INC. and C. R. BARD INC.** | : | |
| | : | |
| **Defendants.** | : | |

## COMPLAINT

### Parties

1. Plaintiffs, Karen Bissett and Roger Bissett ("Mrs. Bissett" and "Mr. Bissett") are citizens and residents of the County of Marion, State of West Virginia.

2. Defendant, DAVOL INC. ("DAVOL") is a corporation that is incorporated under the laws of the State of Rhode Island. DAVOL has its principal place of business in the State of Rhode Island. It manufactures the Composix® Kugel Mesh Patches ("Kugel Patch") at 100 Sockanosset Crossroad, Cranston, Rhode Island. DAVOL has a registered agent in Rhode Island at CT Corporation System, 10 Weybosset St., Providence, Rhode Island. DAVOL focuses its business on products in key surgical specialties, including hernia repair, hemostasis, orthopedics, and laparoscopy.

3. Defendant, C. R. BARD INC. ("BARD") is a corporation that is incorporated under the laws of the State of New Jersey. It is the corporate parent/stockholder of DAVOL and participates in the manufacture and distribution of the Kugel Patch. It also manufactures and supplies DAVOL with material that forms part of the Kugel Patch. BARD at all times relevant

did substantial and continuous business in the State of West Virginia by placing the product into the stream of commerce.

**Jurisdiction**

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because the parties are citizens of different States and the matter in controversy exceeds the jurisdictional amount exclusive of interest and costs.

5. Venue is proper under 28 U.S.C. §§ 1391 (a).

**Facts**

6. Defendant DAVOL designed, manufactured and distributed the Composix Kugel Patch, a hernia mesh patch that was inserted into Mrs. Bissett's body.

7. Defendant DAVOL, through its agents, servants and employees, participated in the manufacture and delivery of the Composix Kugel Patch that was inserted into Mrs. Bissett's body.

8. The Defendants submitted their 510k Application to the Federal Drug Administration (hereinafter referred to as the "FDA") on January 22, 2001. Following this 510k Application the Composix Kugel Patch was authorized by the FDA as a Class II medical device.

9. Immediately after the Kugel Patches were placed on the market, DAVOL and BARD began receiving actual notices of memory ring failures and Kugel Patch defects. DAVOL and BARD actively and intentionally concealed this notice of the defective and dangerous condition associated with the Kugel Patches from Mrs. Bissett, Plaintiff's physicians, and the general public.

10. After the defective and dangerous Kugel Patch was already placed on the market,

Defendants DAVOL and BARD conducted physician screenings and reviews as early as 2002. An Establishment Inspection Report ("EIR") conducted by the FDA in 2006 found that the post market survey validation process of the device was incomplete and failed to include all the data from the physicians surveyed during this time. Whether intentionally or negligently, BARD and DAVOL failed to properly conduct and monitor their own post market design validation physician surveys including those which demonstrated unfavorable or "dissatisfied" results. These complaints and concerns of the physician surveyors were actively concealed by DAVOL and BARD from Mrs. Bissett, Plaintiff's surgeons, and the public at large.

11. On August 26, 2006, Mrs. Bissett had a ventral hernia repair performed at Charleston Area Medical Center in Charleston, West Virginia. Mrs. Bissett had a Composix Kugel Patch implanted during this procedure.

12. The Composix Kugel Patch hernia repair product implanted in Mrs. Bissett was designed, manufactured, sold and distributed by DAVOL to be used by surgeons for hernia repair surgeries and was further represented by DAVOL to be an appropriate, cost-effective and suitable product for such purpose.

13. No later than September 2004, Defendants uncovered serious problems with the weld process involving the memory recoil ring. Despite attempts to correct the problem at the plant, BARD and DAVOL found the corrective measures to be ineffective and the process still not in control. DAVOL and BARD were aware these weld issues had existed from the time the Kugel Patches were originally placed on the market and all current lots suffered from this dangerous defect. This information was intentionally withheld at this time from Mrs. Bissett, Plaintiff's physicians, the FDA, and all other individuals who had been implanted or would be implanted with Kugel Patches using the memory recoil ring.

14. During the 2006 EIR, corporate executives informed the FDA that the spring and summer period of 2005 showed a marketed increase in the number of complaints with the Kugel Patch and the memory recoil ring. In spite of their knowledge of increasing complaints and complications, DAVOL and BARD waited until August 30, 2005 to initiate a partial Kugel Patch distribution hold. DAVOL and BARD actively and intentionally chose not to immediately inform Mrs. Bissett, Plaintiff's physicians, the FDA, and all other individuals who had been implanted or would be implanted with Kugel Patches using the memory recoil ring. DAVOL and BARD waited until December 2005 to notify the public of the potential severity of the complications which were resulting from the dangerous and defective Kugel Patches and have since admitted that the product quality hold and release procedure was not applied on a timely basis.

15. An FDA Class I recall is issued for problems related to medical devices that are potentially life-threatening or could cause a serious risk to the health of the patients implanted with the devices.

16. On December 22, 2005, DAVOL recalled many sizes of Composix Kugel Patches under a Class I recall notice.

17. The Composix Kugel Patch was recalled due to a faulty "memory recoil ring" that can break under pressure. Incidents of ring migration, intestinal fistulae, bowel perforation and even death have been reported.

18. The FDA conducted the aforementioned EIR investigations in January and February of 2006. The results of these investigations determined, among other things, that BARD and DAVOL:

i. had excluded ring failure events which should have been included from their complication database, reports, and recall notices;



01/09/2008 12:48 FAX

ii. misidentified numerous Kugel Patch complication events;
iii. failed to apply the product quality hold and release procedure on a timely basis;
iv. failed to properly follow the procedures for conducting design validation review;
v. failed to identify all the actions necessary to correct and prevent the recurrence of further ring break and Kugel Patch complications; specifically, they provided no justification for including only the Extra Large Kugel Patch sizes in the December 2005 recall;
vi. failed to provide full information which they knew regarding numerous Kugel Patch complaints;
vii. failed to actually perform strength testing on memory recoil rings for all sizes of Kugel patch before putting them into the stream of commerce;
viii. failed to maintain appropriate sources for quality data to identify, track, and trend existing and potential causes for the ring failures and Kugel Patch complaints resulting in numerous inconsistencies and errors in the raw data and from the actual complaints and what was placed in the electronic databases.

19. On March 24, 2006, the initial Class I recall on the Composix Kugel Patch was expanded to include several more sizes of the patch and numerous additional lots of the defective hernia mesh product.

20. On January 10, 2007, the existing recall on the Composix Kugel Patch was again expanded to encompass further production lots of the defective hernia mesh product.

21. Plaintiffs were never informed by Defendants of the defective, dangerous, and recalled nature of the Kugel Patch and memory recoil ring which had been implanted until well after discovery of Bard's and Davol's FDA recall of the product.

22. Neither Mrs. Bissett nor Plaintiff's physicians were aware of the defective and dangerous condition of the Kugel Patch or that this unreasonably defective condition was the cause of Mrs. Bissett's injuries until some time after BARD and DAVOL chose to finally inform the general public of the defective nature of the Kugel Patches and the subsequent recalls.

23. Mrs. Bissett continued to suffer from right upper quadrant pain and on April 20, 2007, she underwent surgery to have the mesh removed.

24. Mrs. Bissett has suffered and will continue to suffer physical pain and mental anguish.

25. Mrs. Bissett has incurred substantial medical bills and Mrs. Bissett has suffered loss of other monies.

26. DAVOL and BARD withdrew a large number of Composix Kugel Patches as a result of the high complication and failure rate of the product.

27. Upon information and belief DAVOL and BARD failed to comply with the FDA application and reporting requirements.

28. Upon information and belief DAVOL and BARD were aware of the high degree of complication and failure rate associated with their Composix Kugel Patch before it was recalled.

29. Upon information and belief DAVOL and BARD were aware of the defect in manufacture and design prior to the recall of their Kugel Patch.

30. Upon information and belief, the complications and failures associated with the Composix Kugel Patches are not limited to the sizes which DAVOL and BARD has already recalled.

31. Upon information and belief, DAVOL and BARD were aware of the defect in manufacture and design of the non-recalled Kugel Composix Patch sizes and chose not to issue a recall on all Kugel Composix Patches in the face of the high degree of complication and failure rates.

**COUNT I**
**Negligence**

32. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

33. Defendants DAVOL and BARD were negligent to Plaintiffs in the following respects:

34. DAVOL and BARD at all times mentioned had a duty to properly manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the Composix Kugel Patch.

35. DAVOL and BARD at all times mentioned knew or in the exercise of reasonable care should have known, that the Composix Kugel Patches were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold supplied, prepared and/or provided with the proper warnings, and were unreasonably likely to injure the Composix Kugel Patch's users.

36. DAVOL and BARD so negligently and carelessly designed, manufactured, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine and supplied the Composix Kugel Patch, that they were dangerous and unsafe for the use and purpose for which it was intended.

37. DAVOL and BARD were aware of the probable consequences of the Composix Kugel Patch. DAVOL and BARD knew or should have known the Composix Kugel Patch would cause serious injury; they failed to disclose the known or knowable risks associated with the Composix Kugel Patch. DAVOL and BARD willfully and deliberately failed to avoid those consequences, and in doing so, DAVOL and BARD acted in conscious disregard of the safety of Mrs. Bissett.

38. Defendants DAVOL and BARD owed a duty to Mrs.Bissett to adequately warn her and her treating physicians, of the risks of breakage, separation, tearing and splitting associated with the Composix Kugel Patch and the resulting harm and risk it would cause

patients.

39. Defendants DAVOL and BARD breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Composix Kugel Patch.

40. As a direct and proximate result of the duties breached, the Composix Kugel Patch used in Mrs. Bissett's hernia repair surgery failed, resulting in Mrs. Bissett suffering pain and harm.

41. As a direct and proximate result of DAVOL's and BARD's negligence, Mrs. Bissett has suffered injuries and damages.

42. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Plaintiffs request a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT II
## Strict Product Liability

43. Plaintiffs re-allege and incorporate by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

44. Defendants DAVOL and BARD are strictly liable to Plaintiffs in the following

respects:

45. DAVOL and BARD designed, manufactured, assembled, distributed, conveyed and/or sold the Kugel Patch for hernia repair surgery.

46. The Composix Kugel Patches subject to the Class I recall were defective because they failed to perform safe and effectively for the purpose they were originally designed. Mrs. BISSETT's Composix Kugel Patch was a Class I recalled device that failed while in her body causing her to develop serious physical complications which required subsequent, painful and unnecessary removal surgery of her Composix Kugel Patch.

47. At all times mentioned, the Composix Kugel Patch was substantially in the same condition as when it left the possession of DAVOL.

48. The Composix Kugel Patch implanted into Mrs. Bissett was being used in a manner reasonably anticipated at the time it was implanted in him by her surgeon.

49. The Composix Kugel Patches, like the one found in Mrs. Bissett, at the time they left the possession of DAVOL and BARD were inherently dangerous for their intended use and were unreasonably dangerous products which presented and constituted an unreasonable risk of danger and injury to Mrs. Bissett as follows:

i. The Composix Kugel Patch was sold in a defective condition by design and manufacture;
ii. The Composix Kugel Patch as designed and manufactured was unsafe to Mrs. Bissett;
iii. The Composix Kugel Patch as designed and manufactured was unreasonably dangerous to Mrs. Bissett;
iv. The Composix Kugel Patch did not perform safely as an ordinary consumer/patient, like Mrs. Bissett, would expect;
v. The Composix Kugel Patch as designed and manufactured was unsafe for its intended use;
vi. DAVOL and BARD failed to warn the end user about the dangers and risks of the product;
vii. DAVOL and BARD knew the component parts of the Composix Kugel Patch as implemented through design and/or manufacture could cause



01/08/2008 12:49 FAX
012/022

injury to the end user;

viii. Failing to implement an adequate, safe and effective "memory recoil ring" and/or its interaction with the mesh of the Composix Kugel Patch to withstand the foreseeable stresses they would be subject to within the intra-abdominal space;

ix. Failing to avoid migration of the Composix Kugel Patch and/or its components from the initial site of the hernia repair surgery.

x. Any other acts or failures to act by DAVOL or BARD regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of Composix Kugel Patches for hernia repair surgery as will be learned during discovery.

50. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Plaintiffs request a judgment against DAVOL and BARD for damages in a sum as permitted by statute together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT III
## Negligent Infliction of Emotional Distress

51. Plaintiffs re-allege and incorporate by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

52. Defendants DAVOL and BARD are liable to Plaintiffs for the negligent infliction of emotional distress in the following respect:

53. Mrs. Bissett suffered severe emotional distress, which was as a result of Defendant's negligent conduct in studying, designing, developing, testing, inspecting,



01/09/2008 12:49 FAX

manufacturing, producing, advertising, marketing, promoting, distributing, and/or selling of the Composix Kugel Patch for hernia repair surgery.

54. Mrs. Bissett suffered severe emotional distress, which was as a result of DAVOL's and BARD's negligent conduct in failing to adequately and safely design and construct an effective and safe Composix Kugel Patch for hernia repair surgery.

55. Therefore, DAVOL and BARD are liable to Plaintiffs.

56. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Plaintiffs request a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT IV
## Intentional Infliction of Emotional Distress

57. Plaintiffs re-allege and incorporate by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

58. Defendants DAVOL and BARD are liable to Plaintiffs for the intentional infliction of emotional distress in the following respect:

59. Mrs. Bissett suffered severe emotional distress, which was as a result of DAVOL's and BARD's extreme outrageous, intentional, willful, and reckless conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising,

marketing, promoting, distributing, and/or sale of the Composix Kugel Patch for hernia repair surgery.

60. Mrs. Bissett suffered severe emotional distress, which was as a result of DAVOL's and BARD's extreme outrageous, intentional, willful, and reckless conduct in failing to adequately and safely design and construct an effective and safe Composix Kugel Patch for hernia repair surgery, in complete and reckless disregard of safety to Mrs. Bissert.

61. Therefore, DAVOL and BARD are liable to Plaintiffs.

62. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Plaintiffs request a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

**COUNT V**
**Breach of Implied Warranty**

63. Plaintiffs re-allege and incorporate by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

64. Defendants DAVOL and BARD are liable to Plaintiffs for their breach of implied warranty in the following respect:

65. DAVOL and BARD sold the Kugel Patch which was implanted in Mrs. Bissett. DAVOL and BARD impliedly warranted to Mrs. Bissett, her physicians and health care



01/09/2008 12:49 FAX

providers, that the Composix Kugel Patch was of merchantable quality and safe for the use for which they were intended.

66. DAVOL and BARD knew or should have known that the Composix Kugel Patch at the time of sale was intended to be used for the purpose of surgically implanting them into the body for hernia repair.

67. Mrs. Bissett, her physicians and health care providers reasonably relied on DAVOL's and BARD's judgment, indications and statements that the Composix Kugel Patch was fit for such use.

68. When the Composix Kugel Patches was distributed into the stream of commerce and sold by DAVOL and BARD, they were unsafe for their intended use, and not of merchantable quality, as warranted by DAVOL and BARD in that they had very dangerous propensities when used as intended and implanted into a patient's body where they could cause serious injury of harm or death to the end user.

69. Mrs. Bissett suffered such injuries and damages as a result of DAVOL and BARD's conduct and actions.

**COUNT VI**
**Failure to Warn**

70. Plaintiffs re-allege and incorporate by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

71. In the course of business, DAVOL and BARD designed, manufactured and sold the Composix Kugel Patch to Charleston Area Medical Center for hernia repair surgeries.

72. At the time of the design, manufacture and sale of the Composix Kugel Patch, and more specifically at the time Mrs. Bissett received the Composix Kugel Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use.



01/09/2008 12:49 FAX

Further the Composix Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Composix Kugel Patch.

73. BARD and DAVOL failed to provide any warnings, labels or instructions of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the products involved significant dangers not readily obvious to the ordinary user of the products. BARD and DAVOL failed to warn of the known or knowable injuries associated with malfunction of the Composix Kugel Patch, including but not limited to rupture of the Patch and severe peritonitis and infection which would require subsequent surgical procedures and could result in severe injuries.

74. The dangerous and defective conditions in the Composix Kugel Patches existed at the time they were delivered by the manufacturer to the distributor. At the time Mrs. Bissett had her hernia repair surgery the Composix Kugel Patch was in the same condition as when manufactured, distributed and sold.

75. Mrs. Bissett did not know at the time of use of the Composix Kugel Patch, not at any time prior thereto, of the existence of the defects in the Patches.

76. Mrs. Bissett suffered the aforementioned injuries and damages as a direct result of DAVOL and BARD's failure to warn.

77. The conduct of BARD and DAVOL in continuing to market, promote, sell and distribute the Composix Kugel Patch after obtaining knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter BARD, DAVOL and others from similar conduct.

**COUNT VII**
**Fraud**

78. Plaintiffs re-allege and incorporate by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

79. In the course of business, DAVOL and BARD designed, manufactured and sold the Composix Kugel Patch for hernia repair surgeries.

80. At the time of the design, manufacture and sale of the Composix Kugel Patch, and more specifically at the time Mrs. Bissett received the Composix Kugel Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further the Composix Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Composix Kugel Patch.

81. BARD and DAVOL was aware of the dangerous and defective condition of the products and intentionally withheld this information from Mrs. Bissett, Plaintiff's physicians, and the general public even though these significant dangers were not readily obvious to the ordinary user of the products, even after a post surgical complication had arisen.

82. BARD and DAVOL fraudulently presented to Mrs. Bissett, Plaintiff's physicians, and the general public that the Kugel Patch was a safe and effective product while they were fully aware that the dangerous and defective nature of the Kugel could and would cause injuries such as those suffered by Plaintiff.

83. Mrs. Bissett and Plaintiff's physicians relied upon the fraudulent misrepresentations and concealments of Defendants and allowed for the defective Kugel Patch to be implanted.

84. As a direct and proximate result of Mrs. Bissett's reliance on BARD's and DAVOL's fraudulent misrepresentations and concealments, Mrs. Bissett was seriously and permanently injured.

85. The conduct of BARD and DAVOL in continuing to fraudulently market, promote, sell and distribute the Composix Kugel Patch while fraudulently concealing knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter BARD, DAVOL and others from similar conduct.

**Wherefore**, Plaintiffs respectfully request judgment in their favor and against DAVOL and BARD for such amount that is determined to be fair and reasonable, for such other relief as may be fair and reasonable under the circumstances and for their costs.

**PLAINTIFFS REQUESTS A TRIAL BY JURY ON ALL COUNTS.**

Plaintiffs, KAREN BISSETT and PHILLIP BISSETT
By their Attorneys,

[signature]

Teresa C. Toriseva
Nancy Wilkins
WEXLER TORISEVA WALLACE LLP
1446 National Road
Wheeling, WV
304-238-0066
304-238-0149 FAX

Edward Wallace
Mark Miller
WEXLER TORISEVA WALLACE LLP
One North LaSalle Street, Suite 2000
Chicago, Illinois 60602
312-346-2222
312-346-0022 FAX

Donald A. Migliori (#4936)
Vincent L. Greene, Esq. (# 5971)
Leah J. Donaldson (#7711)



01/08/2008 12:50 FAX
018/022

MOTLEY RICE LLC
321 South Main Street
P.O. Box 6067
Providence, RI 02940-6067
401-457-7700
401-457-7708 FAX

Fred Thompson, III
Rhett D. Klok
Fred Thompson
Henry Leventis
Carmen Scott
MOTLEY RICE LLC
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29465
843-216-9000
843-216- 9450 FAX

AO 440 (Rev. 8/01) | WVND (02/07) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF WEST VIRGINIA

AT SELECT ONE: Wheeling

KAREN BISSETT and ROGER BISSETT

Select one: Plaintiffs

V.

Davol, Inc. and C.R. Bard Inc

**SUMMONS IN A CIVIL CASE**
**CIVIL ACTION NO.** 1:08-CV-19

Select one: Defendants

**TO** [Name and address of defendant]:

Davol Inc
100 Sockanossett Crossroads, Cranston, RI 02920

C.R. Bard
730 Central Ave., Murray Hill, NJ 07974

**YOU ARE HEREBY SUMMONED** and required to serve on [Name and address of Attorney(s) for Plaintiff(s)]:

Teresa C. Toriseva
Wexler Toriseva Wallace LLP
1446 National Road
Wheeling, WV 26003

an answer to the complaint which is served on you with this summons, within 30 days service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

**Wally Edgell, Ph.D., CLERK OF COURT**

BY: Sue O. Abraham
DEPUTY CLERK

DATE: 1-9-08

01/08/2008 13:15 FAX

Case 1:08-cv-00019-IMK Document 3 Filed 01/09/2008 Page 1 of 1

ORIGINAL

AO82
Rev. 4/90

052698

**RECEIPT FOR PAYMENT**
**UNITED STATES DISTRICT COURT**
**for the**
NORTHERN DISTRICT OF WEST VIRGINIA

at Wh

RECEIVED FROM

Teresa C Toniseya
1446 National Rd
Wh WV 26003

| Fund | |
|---|---|
| 6855XX | Deposit Funds |
| 604700 | Registry Funds |
| | General and Special Funds |
| 508800 | Immigration Fees |
| 085000 | Attorney Admission Fees |
| 086900 | Filing Fees |
| 322340 | Sale of Publications |
| 322350 | Copy Fees |
| 322360 | Miscellaneous Fees |
| 143500 | Interest |
| 322380 | Recoveries of Court Costs |
| 322386 | Restitution to U.S. Government |
| 121000 | Conscience Fund |
| 129900 | Gifts |
| 504100 | Crime Victims Fund |
| 613300 | Unclaimed Monies |
| 510000 | Civil Filing Fee (½) |
| 510100 | Registry Fee |

| ACCOUNT | AMOUNT |
|---|---|
| 510000 | 190.00 |
| 086900 | 60.00 |
| 086400 | 100.00 |
| TOTAL | $ 350.00 |

Case Number or Other Reference: 1:08-CV-19

Checks and drafts are accepted subject to collection and full credit will only be given when the check or draft has been accepted by the financial institution on which it was drawn. american exp.

| DATE | Cash | Check | M.O. | Credit | DEPUTY CLERK: |
|---|---|---|---|---|---|
| 1/9/08 | | | | ✓ | Marcy J. Imm |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT DISTRICT OF WEST VIRGINIA**
**Clarksburg**

| | | |
|---|---|---|
| KAREN BISSETT and ROGER BISSETT, | § | |
| Plaintiffs, | § | Civil Action No. 1:08CV19 |
| vs. | § | |
| DAVOL INC., a subsidiary of C.R. BARD, INC., and HERBERT J. THOMAS MEMORIAL HOSPITAL ASSOCIATION, | § | |
| Defendants. | § | |

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of February, 2008, a copy of the foregoing CROSS-NOTICE OF DEPOSITION OF CERTAIN CORPORATE REPRESENTATIVES OF DEFENDANT DAVOL, INC. was had via first class United States mail, postage prepaid as follows:

Teresa C. Toriseva, Esq.
Nancy Wilkins
WEXLER TORISEVE WALLACE LLP
1446 National Rd.
Wheeling, WV 26003

Edward Wallace, Esq.
Mark Miller, Esq.
WEXLER TORISEVE WALLACE LLP
One North LaSalle St., Suite 2000
Chicago, IL 60602

Donald A. Migliori, Esq
Vincent L. Greene, Esq.
Leah J. Donaldson, Esq.
MOTLEY RICE, LLC
PO Box 6067
Providence, RI 02940-6067

Fred Thompson, III
Rhett D. Klok, Esq.
Fred Thompson, Esq.
Henry Leventis, Esq.
Carmen Scott, Esq.
MOTLEY RICE LLC
28 Bridgeside Blvd.
PO Box 1792
Mt. Pleasant, SC 29465

/s/ Larry W. Blalock